# City of Philadelphia *versus* Haddington M. E. Church.
## Same *versus* Pepper.
## Same for use *versus* Coulson.
# Same for use *versus* Haddington M. E. Church.

The Act of June 27th, 1883, P. L., 161, which provides that every writ of *scire facias*, "issued upon a municipal claim for the recovery of any sum of money, the subject of a municipal lien in cities of the first class, shall have the additional force and effect of a writ of *scire facias* to revive and continue the lien of said claim for a period of five years from the date of said writ," is a local Act, and in conflict with Article 3, section 7, clause 1, of the Constitution.

January 26th, 1887.  Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, and GREEN, J J.  CLARK, J., ab-
sent.

, ERROR to the Court of Common Pleas, No. 4, of *Philadel-
phia County :* Of January Term, 1887, Nos. 77, 78, 105 and 111.

These were four municipal claims filed by the city of Phila-
delphia, and by the city of Philadelphia to the use of McManus
and O'Rourke, and to the use of Horter, respectively against
the Haddington M. E. Church, Edward Pepper and Jesse
Coulston.

Writs of *scire facias* were issued on these claims to recover
the same.   Within five years from the date of issuing said writs,
second writs of *scire facias* were issued to revive and continue
the lien of said claims, pending the prosecution of the first
writs to judgment, under the Act of June 27th, 1883, P. L.,
161.

Judgment was entered upon these second writs as provided
for by said Act.   These judgments however were stricken off
by the court, and upon the trial of the first writs, more than
five years having elapsed since they issued, the court instructed
the juries that the claims had ceased to be liens, and the ver-
dicts must be for the defendants.   Verdicts for the defendants,
and judgment thereon.

On striking off the judgments of revival the court, ARNOLD,
J., filed the following opinion in the case of the city against
Pepper.   He referred to the opinion in the other cases.

A claim for water-pipe was filed against the property of the
defendant on June 29th, 1876.   A *sci. fa.* to levy the amount of
the claim was issued on January 27th, 1881, to which the defend-
ant filed an affidavit of defence on March 25th, 1881.   No fur-
ther steps were taken in the cause until December 29th, 1885,
when the plaintiff's attorney filed an order for the entry of a
judgment of revival of the lien, in accordance with the provis-
ions of the Act of June 27th, 1883.   The defendant now
moves to strike off the judgment of revival of lien, alleging
that the Act of 1883 is unconstitutional.   Several objections
to the constitutionality of that Act were made.

1. The objection that the title of the bill does not clearly
indicate its contents, we do not think is well founded.   It is
not intended that the title of an Act should be a complete
index of its contents: Commonwealth *v.* Green, 58 Pa., 226.
The legislation in the bill is germane to the title, and that is
all the constitution requires.   See Craig *v.* The First Pres.
Church, 88 Pa., 42.

2 and 3. The Act is confined to cities of the first class, and
this, it is alleged, offends against Article III., § 7, clause 1, of
the constitution, which declares that "The General Assembly

shall not pass any local or special law authorizing the creation, extension, or impairing of liens," also Article III., § 7, clause 17, which declares that " The General Assembly shall not pass any local or special law providing or changing methods for the collection of debts." We think this objection is well taken. Laws creating liens, and providing methods for the collection of debts, must be general and apply to the whole commonwealth. Uniformity of legal procedure was the object aimed at by the people in framing the organic law. The evils of special or local laws on general subjects had long been felt. The extent to which they were carried may be seen in the Act of April 29th, 1867, P. L., 1316, extending the laws authorizing the filing of liens for paving and repairing footways, to the first precinct of the Twenty-fifth ward, the smallest political division of territory known to the law. The absurdity of such legislation led the framers of the constitution to put an end to it forever; and the Supreme Court, carrying out the mandates of the constitution, has said : " There is no dividing line between a local and general statute. It must be either the one or the other. If it apply to the whole state, it is general. If to a part only, it is local . . . '. The exclusion of a single county from the operation of the Act makes it local :" Per MERCUR, Chief Justice, in Davis v. Clark, 106 Pa., 384. Hence the Supreme Court held that an Act providing for filing liens in counties which should not have a population of over two hundred thousand inhabitants, is unconstitutional. But the Act of 1883 does not of necessity embrace the whole of a county even, but only a city of the first class, which may be less than a county. Should the city of Pittsburgh become a city of the first class, there would be one law in that city for the collection of municipal claims, and another for the rest of the county of Allegheny. Two things would be required to bring the whole state within the operation of the Act of 1883, a city of the first class in every county, and that city co-extensive with county; in other words, that the whole commonwealth should be a city of the first class. This would require a possibility to happen upon a possibility, and that is to require too much to save the Act from being local. See Commonwealth v. Patton, 88 Pa., 258, and Scowden's Appeal, 96 Pa., 422. It is my opinion that classification of cities and laws confined thereto, are permissible only in matters relating to their municipal government, but the rights of persons and property must be secured by general laws, which must be uniform and in force everywhere throughout the state.

4. Another objection alleged against the Act of 1883 is, that it vests judicial power in the attorney of the plaintiff, thereby violating Article V., § 1, of the constitution, which provides

that the judicial power shall be vested in the courts therein named. Without discussing this point anew, I refer to what was said upon it in The City *v.* Pepper, 16 W. N. C., 334, contenting myself with repeating that the power to enter a judgment of revival of lien, notwithstanding a defence has been interposed, ought to have been conferred upon the courts, where it properly belongs, and not upon the attorney of an interested party. No court would enter a judgment of revival in a case in which there has been such gross laches as is shown in this case. Here the *sci. fa.* went out on January 27th, 1881, and from that day down to the present, the plaintiff has done nothing to secure the enforcement of its claim by a trial on the merits of the case. It has not even ruled the defendant to plead. No excuse of a crowded trial list can be alleged. There has not been any effort made to try the case. The consequence of such laches must be visited upon the plaintiff, and not on the defendant. There has been an unreasonable delay; the claim has not been prosecuted with due diligence, and the plaintiff must suffer the consequences thereof: Ward *v.* Patterson. 46 Pa., 372.

5 and 6. What has been said upon the second, third and fourth objections to the Act of 1883, applies with equal force to the fifth and sixth objections to the constitutionality of the Act. Article V., § 26, of the constitution declares, that " all laws relating to courts shall be general and of uniform operation," etc.; and the Fourteenth Amendment of the Constitution of the United States, provides, " nor shall any state deprive any person of life, liberty, or property, without due process of law." Due process means notice; notice precedes trial, trial leads to judgment, and judgment is the sentence of a court.

It was urged for the plaintiff that we ought not to pass upon the constitutionality of a law, on a motion to strike off a judgment. The constitutionality of an Act may be considered and determined in any of the numerous modes by which legal questions are brought before a court. If a judgment is entered under a law which is unconstitutional, the judgment is null and void, because there is no law to sustain it. In such a case it ought to be struck off so that it may not encumber the record and lead to confusion, when other important questions arise in the case.

Believing that the Act of June 27th, 1883, is clearly unconstitutional, we strike off the judgment of revival of lien entered in this case.

The plaintiffs respectively took these writs and assigned for error the action of the court in striking off the judgments of

[City of Philadelphia *v.* Haddington M. E. Church.]

revival and in directing the juries to find their verdicts for the defendants.

*Pierce Archer*, *David W. Sellers*, and *E. Spencer Miller*, assistant city solicitor (*Charles F. Warwick*, city solicitor, with them), for plaintiffs in error.

The court had no right to strike off judgment for want of a plea, regularly entered for cause subsequent, by reason of which plaintiffs' lien was barred and lost.

There is a peculiar hardship in the present case, for we are without lien or remedy. In the case in hand the defendant filed an affidavit of defence; the cause was put at issue and resulted in a mis-trial, and a re-trial was ordered by the court on June 11th, 1886, within the five years.

After the five years had expired, to wit: on September 16th, 1886, the court granted the rule to strike off the judgment for want of a plea and made the same absolute, thus depriving the plaintiffs of all remedy, for after that the bar of the statute could be successfully interposed in the absence of the revival under the Act of 1883, to be hereafter noticed.

The action of the court on September 25th, 1886, in striking off the judgment for want of a plea, entered on September 28th, 1885, was clearly irregular, especially after the term.

The rule of court, No. 31, paragraph 126, had been in all respects complied with, and at best the most that the court ought to have done was " to open when deemed necessary for the purpose of justice." This is the language of the rule itself.

The decisions are numerous and direct that a regular judgment by default ought not to be stricken off absolutely, if the direct result be the loss of the entire lien.

Had they merely " opened " the default one year after it occurred, that would be within their discretion and not reviewable on error; but here they struck it off, and plaintiffs' claim was by such action lost. This is plain error: O'Hara *v.* Baum, 1 Norris, 419, 420.

There was no irregularity in entering the judgment. The causes assigned were subsequent causes, pleading over, trial, etc., and were only grounds to open the judgment: Shaffer *v.* Brobst, 9 S. & R., 85; Horner *v.* Horner, 3 Wright, 126; Humphreys *v.* Rawn, 8 Watts, 78.

Being for irregularity apparent on the face of the proceedings it is like a demurrer to the record: Mitchell on Rules, 76, p. 4.

If the defendant neglect to move in two terms, and not until after judgment called, and the court refuse to open, it will not be reversed on error: Crosby *v.* Massey, 1 P. & W., 229. See Carr *v.* Howard, 11 W. N. C., 81.

1. Is the Act of June 27th, 1883, local?

In the first place the Judge is in error in his statement, "two things would be required to bring the whole state within the operation of the Act of 1883—a city of the first class in every county—and that city co-extensive with the county," whereas the Act of 1874 (P. L., 230) enacts only, "Those containing a population exceeding three hundred thousand shall constitute the first class." The Constitution, Article XV., recognizes population as the only basis for the formation of cities, as the law presumes that an increase of population will take place. The legal capacity of each city to come within the classification makes the Act general. It is where counties are put under a permanent disability by an act, that the same is made local: Davis *v.* Clark, 106 St. Rep., 379.

2. Does it vest judicial power in the attorney of the interested party?

Is it an exercise of judicial power to file a claim? Yet the effect of such a procedure is to create a lien. Is it an exercise of judicial power to issue a *scire facias* to collect a claim or to revive a judgment? Yet the effect of such a procedure is to create and continue a lien. Is it the exercise of a judicial power when an attorney for a plaintiff in ejectment has it indexed by the prothonotary? Yet such an index creates a lien. Or are any of the powers exercised by an attorney in the issue of the several writs of attachment which create liens, the exercise of the judicial power of the state? No one's rights are determined. No one is deprived of a hearing. No one is deprived of his property. The act is wholly and only remedial.

*F. Carroll Brewster* and *Alexander Simpson* (*Octavius A. Law* with them), for defendants in error.

The difference between striking off and opening a judgment for want of a plea, is, to say the least of it—a refinement.

In Knox *v.* Flack, 10 Harris, 337; and Hutchinson *v.* Ledlie, 12 Casey, 113, this court repudiated the supposed distinction between the two rules.

The Act of June 27th, 1883, is unconstitutional.

1. Article 3, sec. 3, provides that "No bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in its title."

The decisions of this court are numerous, but the following are believed to be all that are reported: Blood *v.* Mercelliot, 3 P. F. S., 391, practically overruled *in re* Phœnixville Borough, 2 Chester Co. Rep., 433; *in re* Church St., 4 P. F. S., 353; Comm. *v.* Green, 8 Id., 234; Yeager *v.* Weaver, 14 Id., 425; Dorsey's Appeal, 22 Id., 195; Union Passenger Railway Company's Appeal, 32 Id., 92; Allegheny County Home's Case,

[City of Philadelphia v. Haddington M. E. Church.]

27 Id., 77; State Line & Juniata R. R. Company's Appeal, 27 Id., 429; Mauch Chunk v. McGee, 31 Id., 433; Beckert v. Allegheny County, 4 Nor., 195; Borough of McKeesport v. Owens, 6 W. N. C., 492; Craig v. Church, 7 Nor., 42; Ruth's Appeal, 10 W. N. C., 498; Taggart v. The Commonwealth, 6 Out., 354; Road in Phœnixville Borough, 2 Chester Co. Rep., 433; *in re* Airy Street, 18 W. N. C., 170.

2. Article 3., section 7, clause 1, provides : " The General Assembly shall not pass any local or special law authorizing the creation, extension, or impairing of liens:" McCarthy v. Commonwealth, 16 W. N. C., 498; Wheeler v. Philadelphia, 27 P. F. S., 338; Kilgore v. Magee, 4 Norris, 401; Commonwealth v. Patton, 10 Id., 125; Scowden's Appeal, 15 Id., 422; Davis v. Clark, 10 Out., 384; Morrison v. Bachert, 2 Amerman, 322; Appeal Scranton School District, 3 Amerman, 176; City of WilkesBarre v. Myers, Id., 395; Strine v. Foltz, Id., 349; City of Scranton v. Silkman, Id., 191; City v. Pepper, 16 W. N. C., 334.

3. Article 3, sec. 7, clause 17, provides, *inter alia*, as follows: " The General Assembly shall not pass any local or special law . . . . . regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts . . . . . or providing or changing the methods for the collection of debts," etc., etc.

If the contention above made that the restriction to cities of the first class is improper classification in this case, be correct, then the Act would seem to infringe, also, upon this clause.

That it regulates the practice in the courts of Philadelphia county in this class of cases is too plain for argument; and that it is unconstitutional for this reason seems flatly decided by Strine v. Foltz, 18 W. N. C., 359, *supra*.

4. Article 5, sec. 1, provides, " The judicial power of this commonwealth shall be vested in a Supreme Court, in courts of Common Pleas, courts of Oyer and Terminer and General Jail Delivery, courts of Quarter Sessions of the Peace, Orphans' Courts, Magistrates' Courts, and in such other courts as the General Assembly may from time to time establish:" Greenough v. Greenough, 1 Jones, 494; Ervine's Appeal, 4 H., 264; Bagg's Appeal, 7 Wr., 514; Page v. Allen, 8 P. F. S., 338; Hortsman v. Kaufman, 1 Out. 151; Coal Co. v. Snowden, 6 Wr., 488; Tillmes v. Marsh, 17 P. F. S., 508; Haines' Appeal, 23 P. F. S., 169.

5. Article 5, sec. 26, provides that " All laws relating to court shall be general and of uniform operation ; and the organization and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgments of such courts, shall be uniform."

[City of Philadelphia *v.* Haddington M. E. Church.]

6. The 14th Amendment of the Constitution of the United States provides, *inter alia*, "Nor shall any state deprive any person of life, liberty, or property without due process of law," etc.

"Due process of law," as relates to judicial proceedings, necessarily implies that there shall be an impartial tribunal to pass on all questions that may arise in the suit: Cooley's Constit. Lim., * 354 *et seq.*, and cases cited. And particularly is an Act obnoxious which authorized any interested person to sit in judgment in his own cause: Id., * 411 *et seq.*

Mr. Justice Gordon delivered the opinion of the court February 7th, 1887.

As a statement of one of these cases will exhibit the principles which induced the court below to enter judgment for the defendant in each of them, we need not multiply words by a repetition of their several histories.

A municipal claim for paving and curbing, was filed October 10th, 1876. On September 6th, 1881, a *sci. fa.* was issued, and on October 21st, 1881, an affidavit of defence was filed. On the 5th of June, 1885, the claim not having been reduced to judgment, a judgment of revival was entered under the Act of June 27th, 1883. On September 25th, 1886, a rule was entered to strike off the judgment of revival, entered as above stated, and on the 9th of the following October, the rule was made absolute. November 8th, 1886, the case was called for trial, and on the same day the jury, by direction of the court, found a verdict for the defendant. The contention on part of the plaintiff was that the expiration of the lien was prevented by the operation of the Act of June 27th, 1883, which Act is in the following language, to wit:

Section 1. Be it enacted, etc., that every writ of *scire facias*, which has been issued within the past five years, or which may hereafter be issued upon a municipal claim for the recovery of any sum of money, the subject of a municipal lien in cities of the first class, shall have the additional force and effect of a writ of *scire facias* to revive and continue the lien of said claim for a period of five years from the date of said writ, and when said writ of *scire facias* shall have been served by the sheriff, by a posting and advertising, or otherwise, as now provided by law, the prothonotary of the court shall, at any time, on the order of the plaintiff's attorney filed in the cases, enter a judgment that the lien of said claim shall be revived and continued for the further period of five years from the entry thereof; which said judgment may be entered thereon, pending the determination of the issues raised in such case, and shall have the

[Biddle v. Tomlinson et al.]

same force and effect as if entered on a distinct *scire facias* to revive the lien of such claim.

We agree with the court below that this Act is unconstitutional. Without dwelling on the various points at which, as the learned judge shows, this Act directly conflicts with the constitution, we content ourselves with pointing out one of them. Article 3, sec. 7, clause 1: "The General Assembly shall not pass any local or special law authorizing the creation, extension, or impairing of liens." That the Act above set forth is local we need not spend time in proving, for this will, no doubt, be admitted. So, that it is designed to extend the liens of municipal claims that otherwise would have expired by force of previous statutory provisions, is not a matter of question, as that is the special and sole intention of the Act; the very purpose for which it was passed. It thus appearing that this statutory measure is, in the particular stated, in direct conflict with the supreme law of the commonwealth, nothing more need be said in justification of the judgment of the court below.

The several judgments are affirmed.