## Wilkinson, Carter & Co. *versus* Stewart *et al.*

85 255
128 268

1. It is not a bar to an action of replevin that the plaintiff's goods have been commingled with like goods of the defendants by the wrongful act of a third party.

2. *It seems*, however, that if the character of the goods is so essentially changed by the mixture that one aliquot part would not be the equivalent for another, the case would present a different question.

October 15th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Venango county:* Of October and November Term 1877, No. 155.

Replevin by Samuel W. Stewart and Francis Merrick, against Wilkinson, Carter & Co., for 4100 barrels of crude petroleum, valued at $9225.

In the early part of 1874 Stewart & Merrick stored about 17,000 barrels of crude petroleum in an oil tank of about 20,000 barrels capacity, called the "Caledonia tank," which they purchased from Johnson & Co. In this tank there were also about 2000 barrels of oil belonging to Johnson & Co., which plaintiffs agreed to store for them.

The defendants also owned an oil tank, the "Carter" tank, in the vicinity of the one above mentioned, the capacity of which was about 10,000 barrels, in which they had some 8000 barrels of oil stored, and they allowed Johnson & Co. the use of the 2000 barrels of surplus tankage in their tank. Johnson & Co. had an oil refinery in the immediate neighborhood of both these tanks, and had, it appeared, a pipe connecting this refinery with the tanks. In the early part of 1876 the defendants learned that Johnson & Co., without their knowledge or consent, had drawn out of their tank all the oil therein except about 1600 barrels, and upon demand they promised to return all the oil of defendants thus taken, and did replace about 6000, 4100 barrels of which, it appeared from the evidence on behalf of plaintiffs, were taken from the tank of the latter by means of the pipe connection above alluded to. There was evidence, however, that in addition to the 1900 barrels in plaintiffs' tank belonging to Johnson & Co., they had replaced 2200 barrels, thus making the 4100 barrels taken. There was also testimony on the part of plaintiffs that Johnson & Co., previous to the time of drawing out the 4100 barrels, had been taking out oil of the plaintiffs and replacing it with worthless fluid, tar and benzine from their refinery; this to show that their oil had deteriorated in quality, and they therefore contended that the 1900 barrels already in plaintiff's tank, and the 2200 put there by Johnson & Co. to make good the 4100 run into defendant's tank, should be applied to make good the quality of plaintiff's oil. The testimony as to the quantity and quality of the oil thus transferred from the refinery is commented upon with sufficient fulness in the opinion of this court.

[Wilkinson *v.* Stewart.]

The plaintiff submitted the following point, which the court affirmed:—

If, without their knowledge or consent, plaintiffs' oil was taken out of their tank and mingled with defendants' oil, their title was not thereby lost, and they were entitled to have, out of the common mixture, a quantity equal to that taken from their tank and put into such mixture, and may maintain replevin therefor.

The defendants submitted the following point, which was refused:—

If the oil of plaintiffs was taken by Johnson & Co. without right, and delivered to defendants to supply oil owed them, and defendants, being ignorant of such wrongful taking by Johnson & Co., received the oil and mingled it with other oil of their own, so that its identity was lost, plaintiffs cannot recover in this action.

In their general charge the court, *inter alia*, said:—

"The rights of Johnson & Co. in each tank, for storage of oil, did not divest either plaintiffs or defendants of their oil. The mingling of oil for storage does not defeat the right of each owner to his portion of the common mass. Johnson & Co. had no right to take from either tank more oil than belonged to them. If they wrongfully took oil from the plaintiffs' tank and placed it in the defendants', the right of property was not changed. If they took the oil claimed in this action without their knowledge or consent, to replace oil which they had wrongfully abstracted from the defendants' tank, so long as the oil so taken remained in that tank, though mingled with other oil of the defendants therein, the plaintiffs may maintain replevin therefor. The mixture was by no fault of the plaintiffs. [The property, as manifest from the treatment of all parties, was uninjured by the mixture, and no wrong is done to any one by each taking out his proportion of the common mass.] When such property can be traced into a tank, the owner ought not to lose, nor should the party in possession, without right, be a gainer because he was not a wrongdoer in the taking and mingling it with his own. The owner has as clear a right to recover his oil as he would have had had it been placed there by his agreement with the owner of the tank for storage with other oil.

[The oil that is in question, so far as the plaintiffs and defendants are concerned, is the oil that was taken from the plaintiffs' tank to defendants' tank. It is alleged, and there is evidence which will likely induce you to believe that there was very serious injury done to the plaintiffs by Johnson & Co., prior to this, in taking oil from them and replacing it with worthless stuff, to keep the tank full. Now, we leave it to you, under the evidence, in case you find any oil was restored at all, to say whether Johnson & Co. restored it in replacing the oil taken to satisfy the plaintiffs' claim on them. If you so find it was restored for that purpose, then the principles we have stated would apply in reference to its deduction."]

[Wilkinson v. Stewart.]

The verdict was for the plaintiffs; and after judgment the defendants took this writ, their assignments of error being 1 and 2, the portions of the charge in brackets; 3, the affirmance of plaintiffs' point; and 4, the refusal of defendants'.

*Dodd & Lee* and *Neill & Heywang*, for plaintiffs in error.—The court were clearly wrong in fact, when they assumed that there was no injury to defendants' oil by the mixture. But whether wrong or right in their assumption of fact, the court should have left the question to the jury whether the oil of defendants was uninjured by the mixture, and instructed them that even if such was the case, replevin was not the proper remedy: Snyder v. Vaux, 2 Rawle 427. See Musselman v. Railroad Co., 2 W. N. C. 105.

The court, we contend, also erred in the language in which they submitted to the jury the question as to how such oil had been taken out and returned. The defendants below were innocent of any wrong. They were, in fact, less in fault, and more wronged, than the plaintiffs; and under the circumstances of this case, the only just and correct theory to hold is that the plaintiffs and defendants became joint owners of the mixture in defendants' tank, according to the value of the respective portions of each; and if so, replevin would not lie: Hilliard on Remedies for Torts 43; Barnes v. Bartlett, 15 Pick. 71.

*T. A. Morrison* and *C. Heydrick*, for defendants in error.— Throughout the trial it was not shown that the oil transferred from plaintiffs' tank to defendants' was not like the oil in that of the latter at the time of the transfer. There was no evidence whatever to show any difference in quality. In Pennsylvania, replevin lies wherever one man claims goods in the possession of another, and this, whether the claimant has ever had possession or not, and whether his property in the goods be absolute or qualified, provided he has the right of possession: Harlan v. Harlan, 3 Harris 507. And it seems but another mode of stating the proposition, to affirm that whatever goods a man may lawfully recapture as his rightful possession, he may invoke the process of the court to restore to or put in his possession. It would be an anomaly in jurisprudence to hold that a man may of right do with a strong hand what the ministers of the law are powerless to do for him: Sharswood's note to 2 Blackstone 405; Wood v. Fales, 12 Harris 246; Tripp v. Riley, 15 Barb. 333; Fobes v. Shattuck, 22 Id. 568; Kimberly v. Patchin, 19 N. Y. 330; Whitehouse et al. v. Frost et al., 12 East 614.

Mr. Justice PAXSON delivered the opinion of the court, January 7th 1878.

The first specification alleges that the court below erred in

4 NORRIS—17

[Wilkinson *v.* Stewart.]

assuming in its charge to the jury that the oil in defendant's tank was uninjured by the mixture. This would have been error had any such question of fact been distinctly raised upon the trial. The learned judge says in that portion of the charge: "The property, as manifest from the treatment of all parties, was uninjured by the mixture, and no wrong is done to any one by each taking out his proportion of the common mass." This language leaves us no room to doubt that the court was under the impression at least that no question had been seriously made on the trial as to the quality of the oil in defendants' tank. A careful examination of the evidence leads us to the conclusion that the court was correct in this respect. The evidence of Mr. Sterritt, relied upon by the plaintiffs in error, is not essentially in conflict with this view. He says he examined the Carter tank prior to March 31st 1876, and there was three feet of liquid; one foot of sediment and two feet of what the witness supposed to be good oil. He examined the tank again after it was filled up by oil from the Caledonia tank, on the date last mentioned, and found about eleven feet of liquid, of which two feet eight inches was sediment and the balance good oil. The amount of sediment would seem to bear more upon the question of the quantity than the quality of the oil—the sediment being deducted in estimating quantity, and the superincumbent oil not being essentially affected in quality thereby. The evidence also tends strongly to show that Johnson & Co. practically exhausted the Carter tank prior to the last run from the Caledonia tank in the latter part of March 1876, from which it would follow that the oil in the Carter tanks, after said run, having been almost if not wholly drawn from the Caledonia tank, must have been of one quality. Not only does the evidence fail to disclose any serious contention as to the quality of the oil, but the points put to the court by the defendants below make no reference to any such question. Had the oil been so mixed in defendants' tank as to change its quality in an essential degree, so that one barrel drawn out would not be the equivalent of any other barrel previously put in, it was an important fact to have shown, and would not have escaped the vigilance of counsel either in the examination of the witnesses or the points submitted to the court. We do not think this specification is sustained.

The second specification is not free from difficulty. The learned judge at the conclusion of his charge submitted to the jury as a question of fact, whether the oil restored to the Caledonia tank by Johnson & Co. was placed there in return for the oil which it was conceded they drew out, or whether they put it back to satisfy the claim of the plaintiffs below, for the injury caused by Johnson & Co. in pumping a quantity of worthless stuff from their slop tank into the tank of plaintiffs. I find no evidence in the cause that Johnson & Co. restored any oil for any other purpose than that of replacing

the oil taken out by them. There may be therefore technical error in this portion of the charge. We do not think it, however, a sufficient ground of reversal. In any proper view of the case I am unable to see how the defendants below could have been injured by this portion of the charge. The evidence on the part of the plaintiffs as to the quantity of slops pumped into their tank by Johnson & Co. had reference more especially to the quantity of the oil than to its quality, or to any injury resulting from the mixture. The effect of it was to show that with a given number of feet of fluid in the tank, a certain proportion of it was tar, benzine, sediment, &c. By deducting the sediment and the ten per cent. of tar and benzine diffused through the oil the amount of the latter fluid could be ascertained with reasonable accuracy. It matters not, therefore, for what purpose Johnson & Co. put back oil into the Caledonia tank. All that had been drawn out by them into the Carter tank and not restored could be followed and replevied by the plaintiffs below. That Johnson & Co. had pumped a given number of barrels of worthless stuff from their slop tank into plaintiffs' tank was no restoration of the oil drawn out thereof by them. Hence what Johnson & Co. intended to do when they put back oil was of little consequence. The question of how much oil they took out, and how much they returned, was fairly submitted to the jury.

The third and fourth specifications allege error in the answers to points. It was urged that the answer to the plaintiffs' first point should at least have been qualified; that it refers only to quantity and ignores quality and every other essential element in the case. We have already said that the record fails to disclose any serious contention in regard to the quality of the oil. Under the facts of the case we do not regard either the point or the answer objectionable. The defendants' first point, which was refused, raised the question of the right of the plaintiffs to maintain replevin where the oil had been mixed without the act of the defendants. In the recent case of Hutchison v. The Commonwealth, 1 Norris 472, the question of the effect of commingling oil in tanks and pipe lines was discussed at some length. It is not necessary to go over the ground again. It is well settled as a general principle that, in Pennsylvania, replevin lies wherever one man claims goods in the possession of another, and this whether the claimant has ever had possession or not, and whether his property in the goods be absolute or qualified, provided he has the right of possession : Harlan v. Harlan, 3 Harris 507, and cases there cited. In this case both the plaintiffs and the defendants had a large oil tank, situated near each other. Johnston & Co. had an oil-refinery near said tanks, and had also the right of storage in each of them to the extent of two thousand barrels. The tank of the defendants was connected with the refinery by means of a pipe, and was used by Johnson &

[Wilkinson *v.* Stewart.]

Co. as a supply tank. They drew out oil for the refinery and replaced it in whole or in part from time to time. Finally they connected the two tanks by a pipe, and the plaintiffs' tank being higher than the defendants' the oil would flow from the former to the latter. When Johnson & Co. drew oil from defendants' tank for their refinery they replaced it on several occasions by drawing from the plaintiffs' tank. They acquired no title to the oil thus unlawfully abstracted. Nor did the defendants acquire any title by having it thus run into their tank by Johnson & Co. to replace the oil taken out by them.

The plaintiffs had a clear right to follow and reclaim their oil by a writ of replevin, unless prevented by the fact of its mixture with other oil of the defendants. A given number of barrels of plaintiffs' oil having been unlawfully drawn out of their tank and placed in defendants' tank, they were entitled to have the same number of barrels of oil put back again. Had the character of the oil been so essentially changed by the mixture that one barrel would not be the equivalent for another barrel, the case would have presented a different question—one that we are not now required to pass upon. We are not prepared to say that the defendants are wholly without responsibility for the mixture. They allowed Johnson & Co. to use their tank as a supply or feeder for their refinery; to draw out oil at will, and replace it. This necessarily involved a mixture of the oil. The right of the owner of oil in tanks or pipe lines to take out his aliquot part was distinctly recognised in Hutchison *v.* The Commonwealth, *supra*. As bearing upon the same principle, we may refer to Wood *v.* Fales, 12 Harris 246; Tripp *v.* Riley, 15 Barb. 333; Fobes *v.* Shattuck, 22 Id. 568; Kimberly *v.* Patchin, 19 N. Y. 330.          The judgment is affirmed.