## The City of Scranton *versus* Silkman.

1. The Act of May 24th, 1878, P. L. 133, authorizing any owner of real estate in any county of less than five hundred thousand inhabitants, aggrieved by the assessment of his real estate, to appeal to the Court of Common Pleas from the decision of the County Commissioners or the Board of Appeal and Revision of any City of the third class is a local Act regulating the affairs of counties and cities, and is therefore in conflict with section 3, Article III. of the Constitution.

2. Davis *v.* Clark, 10 Out., 384, followed.

February 25th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lackawanna county:* Of January Term 1886, No. 370.

This was an appeal filed by Catharine Silkman, September 27th, 1883, from the decision of the Board of Appeal and Revision of the city of Scranton under the Act of April 4th, 1878, P. L., 133.

On February 8th, 1886, the city of Scranton pleaded to the jurisdiction of the Court by reason of the unconstitutionality of said Act.

On February 10th, 1886, the Court, HAND, P. J., filed the following opinion, making a decree reducing the plaintiff's assessment as prayed for.

This is an appeal from the assessment of city taxes for the year 1883 and the decision of the Board of Appeal and Revision. It is taken under the provisions of an Act of Assembly entitled "An Act Authorizing Appeals from Assessments in this Commonwealth to the Court of Common Pleas," approved 20th April, 1876, P. L., 44, and the supplement thereto approved 24th May, 1878, P. L., 133. To this appeal the city of Scranton filed the plea that this Court has no jurisdiction over the subject-matter of this case because the Act of 1878, under which the appeal is taken, is unconstitutional and

void, for the reason that it is special legislation prohibited by the Constitution. The plaintiff joined issue on the above plea. Upon this issue it was agreed in writing that if the Court concluded to take jurisdiction of the case, the amount of reduction asked for and agreed to by defendant is $1,694, being the amount separately assessed for coal on third-class land, the surface of which was assessed separately against the plaintiff. It was further agreed that for the purpose of considering the constitutionality of the Act of 24th May, 1878, that the Act of March 18th, 1875 (P. L., 15), was accepted by the city of Scranton and all other cities of the Commonwealth except Lancaster, Allegheny and Wilkes-Barre, prior to 1878, and that the last named cities have not accepted the provisions of the Act of May 23d, 1874, nor of March, 1875, relating to the classification of cities, &c.

The sole question for our consideration is the constitutionality of the Acts of 1876 and 1878. These Acts are attacked upon the ground of their being special legislation within the prohibition of Article III., section 7, as being Acts "regulating the affairs of counties, cities, townships, wards, boroughs, or school-districts."

It is urged that this question is settled by the decision of Davis *v.* Clark, 10 Out., 384, and by the decision of Judge GALBRAITH, in Railway Company's appeal from decision of Commissioners of Erie County, 16 Pitts. Leg. J. 191.

The decision of the present question differs materially from that in Davis *v.* Clark, which involved an Act of Assembly directly in violation of the letter of the Constitution. That was a case relating to the creation of liens. It was the creation of a new lien, and was, as the Supreme Court says, "special in its terms and local in its effect." It needed no construction to bring that Act of Assembly within the first clause of section 7, Article III. An examination of the Acts now under consideration will show their relations to the Constitution to be entirely different. The late day of argument of this case, and the short time allowed us in its decision, preclude as full an expression of our views as the importance of the question involves, and we desire. An early disposition of the question is sought because this is the triennial year of assessment. Our examination has led us to the following conclusion:

1. (*a*) The Act of 1876, in providing that it should apply to counties having less than 500,000 inhabitants, adopted a classification based on population which has already been sustained by the Supreme Court as a proper classification on the part of the Legislature.

(*b*) It is a classification not only proper, but one which the

[City of Scranton v. Silkman.]

history of legislation for over a century rendered necessary in so far as it applies at present to but one city, and that Philadelphia. While it is based upon population, the necessities of the city of Philadelphia, as shown in the history of legislation, constitute a fact which justifies such a classification.

2. The Act of 1876, and its supplement, is not local nor special legislation within the meaning of the Constitution. Legislation may be denominated general in the sense of not being local nor special for various reasons. The clause against special legislation sought to remedy and prevent an evil. The Act of 1876 made that a general law which before was special, A law may be judged as well by the results produced and the effect of the law which means its aim, as by its language. The City of Philadelphia had its legislation allowing appeals to the Common Pleas long before the present Constitution. The Act of 1876 makes this valuable privilege co-extensive with the state. In fact it gives the privilege to every " owner of real estate in this Commonwealth," on real estate in the counties outside of Philadelphia, and of course covers all owners residing in Philadelphia.

The Act of 1876 is not an Act regulating the affairs of counties. The matter of taxation, in all its branches, is pre-eminently a state affair. The power is a sovereign power. The subject-matter of assessment, the levying and collecting of taxes, is wholly within the power of the state. It is the internal administration and management of counties, cities, townships, wards, boroughs, or school districts that is aimed at in " the regulation of these affairs," not the sovereign power and regulation of taxation with all its vital governmental concomitants.

4. The supplement of 1878 to the Act of 1876 is general, in that it applies to all the cities of the third class. It is possible a city may exist that cannot from some cause avail itself at present of its provisions. That does not, however, make a law special or local, which in its terms is general.

The propositions above stated we believe are sustained by authority and a careful examination of the Acts in question.

The classification which separates, for the time being, the City of Philadelphia, is sustained by the case of Wheeler v. Philadelphia, 77 Pa. St., 350. In that case the Court says, " A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons, or things of a class, is special." A classification for the purposes of taxation is pre-eminently proper, and this may be made on the basis of population, although it includes in one class the whole of the state, except one county, and puts that county in another class. Especially is this proper where that

3 AMERMAN—13

[City of Scranton *v.* Silkman.]

county embraces the largest city in the state, co-extensive with the county, and differing in many respects from all the other cities and counties of the Commonwealth. To what extent this difference reaches may be discovered from the language of Judge PAXSON, on page 350 in the case cited. In regard to the character of previous legislation relating to Philadelphia, we shall have something further to say. It is to be remarked that this is not a geographical classification in the Acts of 1876 and 1878, it is one based wholly on population. Undoubtedly a fact which moved the legislature to adopt a maximum of population which excluded the rest of the state and included Philadelphia, was the previous legislation on this same subject-matter, but that is immaterial, provided she could keep her legislation general within her power of classification.

In Philadelphia it would appear that assessors are elected; Purdon, vol. 2, p. 1599, pl. 115. In 1865 a board of revision was created with the right of appeal to the Court of Common Pleas : Purdon 1603, pl. 135. By the Act of 2d April, 1867, supplemental to Act of 1865 (Purdon 1605, pl 145–147) full provision is made for the assessment and collection of taxes for the city and county of Philadelphia. Is it possible that the legislature may not, upon the subject of taxation, recognize this state of things in the largest county of the Commonwealth in providing for general legislation which covers the rest of the state ? Must the legislature and the rest of the state be handicapped by a technical construction of the Constitution which would create an evil worse than that sought to be remedied ?

Again we say the subject-matter of this legislation is not the regulation of the affairs of counties. We are not disposed to place too technical a meaning upon the word " affairs." We are disposed to view the expression " regulating the affairs of counties, townships, &c.," as that internal government of these subdivisions of the state which should be left to themselves and which, consistent with the safety of the state at large, may be so remitted by general laws without special interference. It is said by some writers that " affairs " relates to the business of the county. It is enough for the present comprehensive view that it should include all that may safely be given to the counties by general laws and not retained within the special control of the Legislature—the sovereign power—for the public good. The power of taxation is a sovereign power. No limitation is placed by the Constitution on this power except that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority laying the tax—a limitation which may require, in order that they may be levied and collected under general laws, more or

[City of Scranton v. Silkman.]

less of special legislation. No express power is given by the Constitution to the legislature upon the subject of taxation—that power is sovereign. Every utterance is an emphatic expression of the most unlimited power on the legislature to tax; they are restricted in their powers of exemption (Article III. section 7, Article IX. section 2) and they may not surrender this power (Article IX. section 3.) The fact that taxation is necessarily associated with the affairs of the county, or is an affair indirectly in which the county is interested, cannot affect the principle involved. The legislature must necessarily keep the power of taxation wholly within its own control. Cooley, in his Constitutional Limitations, page 518, says: "Whether in any case a charter of incorporation could be held void on the ground that it conferred unlimited power of taxation, is a question that could not well arise, as a charter is never granted which does not impose some restriction." He also says: "It is as true of the political divisions of the state as it is of the state at large, that legislative authority must be shown for every levy of taxes. The power to levy taxes by these divisions comes from the state." See also Boroughs on Taxation, secs. 2 and 4.

It has always been an underlying principle in Pennsylvania, not only that taxes can only be voted by the people's representatives, but that, so far as possible, the machinery of taxation should be carried on by the people themselves, either by an active participation in the assessment of the same or by a tacit acquiescence. The enforcement of these principles is under the supervision of the state. We believe the two Acts of Assembly in question in this case are the only instances in which the legislature has given to every owner of real estate in this Commonwealth the full power by appeal to actively or tacitly acquiesce in the assessment of his property. It has been a source of complaint that non-resident taxpayers have not had a full opportunity of appealing, free from local prejudice. This Act now gives to them this right. To belittle this right by calling it an affair of the county when it is the sovereign act of the legislature on a subject wholly within her control, and which in its scope is far reaching for public good, and for the honor of the state at large, we think is too technical. With this power of appeal the taxpayer either tacitly or actively acquiesces in the result of his assessment. The county is the mere instrument or channel through which the sovereignty of the state flows. It is seldom that the state exercises her power to assess taxes directly. It chooses to exercise it upon the county directly, but it is no less the power of the state, and of the state alone, which is felt and exercised even though it be to provide for local government by local taxation.

In the instances in which the Court has held that this clause of the Constitution has been violated, we are confident it will be found that it was where the internal business of the county, properly within her own control, was interfered with. As an example we refer to Montgomery *v.* Commonwealth, 10 Norris, 125.

Again, in so far as the Act of 1878, comprehending it in the Act of 1876, relates to cities of the third class, we apprehend that upon the face of the Act it applies to all cities of the third class. If it does, it is general. Upon this point, as also upon the whole question involved in the Act of 1876, we cite Cooley's Limitations, star page 129, note foot page 142, and cases there cited. Because some cities have not accepted the Act of 1875, and have no board of appeal and revision, cannot affect the generality of the Act in itself. A fact *en pais* outside of legislation may or may not be recognized by the legislature.

Another principle is involved in this subject matter of general as opposed to special legislation, which we have referred to in the case decided by us at this time, involving the constitutionality of the Act of 1875 relating to cities. It is a question which affects or may affect all the old cities of the state, but especially the city of Philadelphia, because it is the oldest and largest. It may be conceded that the charter of a municipal corporation is not a contract in the sense that the legislature may not repeal it or any portion of it. But the question is whether under the impulse and restraint that is upon the legislature to provide general legislation, such general legislation, without any clear expressed intention to repeal any part of a city charter granted before the new Constitution, can be allowed to have that effect. May not the legislature, in order to prevent catastrophe, apprehended or real, exclude a city like Philadelphia from such legislation, which would be general without such exclusion? In the present case we have held that she may make that general which before was special, without repealing the special legislation. This involves to some degree the power of classification in order to exercise the power. The principles enunciated in Davis *v.* Clark do not militate against this view when the subject-matter of the legislation is general.

From the foregoing considerations we have been compelled to differ with the learned Judge who decided the case in Erie County. We believe the legislation in question is not special nor local, because it provides an appeal for " all owners of real estate in this Commonwealth ; " because its subject-matter, taxation, is of necessity general, and because in its effect it provides a right of appeal to the Common Pleas over the

whole Commonwealth, which before existed over only a part thereof. We also remark that this legislation does not affect the "levying and collecting" of taxes, it only provides an appeal from the decision of commissioners or board of revision and appeal. We, therefore, entertain this appeal, and in accordance with the facts agreed upon reduce the assessment $1,694.

Counsel for the city except, and a bill is sealed for the defendant.

The city of Scranton thereupon took this writ, assigning for error the overruling of the plea to the jurisdiction of the court and the entering of the decree.

*I. H. Burns* (*Arthur C. Logan* with him), for plaintiff in error.—1. The Act of May 24th, 1878, is a local law: Davis *v.* Clark, 10 Out., 384; Scowden's Appeal, 15 Norris, 425; Commonwealth *v.* Patten, 7 Id., 260; McCarthy *v.* Commonwealth, 16 W. N. C., 498.

2. If this is a local or special law, is it such legislation as is prohibited by the Constitution? We claim that it violates three constitutional provisions:

(1) It regulates the affairs of counties and cities.

(2) It regulates the practice and jurisdiction of courts.

(3) It levies taxes under a local law.

(1) It regulates the affairs of counties and cities. In Montgomery *v.* Com., 10 Norris, 133, this court defined "affair" to be "business; something to be transacted; matter; concern." Surely these terms are broad enough to cover the subject of this Act. Indeed, the principal "business" of a county is the levying and collecting of taxes.

(2) The Act changes the jurisdiction of courts. It gives to Courts of Common Pleas authority over subject-matter which they did not have before, either by statute or common law. It is a subject that does not properly belong in a court of law because it really requires an experience and knowledge of the value of real estate, rather than the decision of any questions of a practical character: Sec. 7, Article III.; Sec. 26, Article V., Constitution.

(3) It is levying a tax under a local law. Sec. 1 of Article IX. provides that all taxes shall be levied and collected under general laws. The word levy in this connection means the whole process up to the time the tax is ripe for collection. It means the assessment and revision as well as the ordinance or resolution fixing the rate. This Act provides for a very important part of the machinery for levying county and city taxes. If it is done by a local law, then it is clearly in violation of the constitutional provision above referred to.

*E. N. Willard* (*Everett Warren* with him), for defendant in error.—The Act is a remedial statute, empowering the courts to correct errors and redress wrongs.

It is in no sense " a special or local law regulating the affairs of counties, cities, townships, wards, boroughs, or school districts." It is simply a right given to the citizens to appeal to a court of justice for the correction of the blunder, injury or intentional wrong perpetrated by the commissioners of a county, or the board of appeal and revision of a city of the third class.

The courts do not assess or value real estate. They have the power only to make uniform and lawful that which is erroneous and unlawful. For that purpose, and that only, the courts take jurisdiction and act. Under the Act in question, they have undoubted authority so to act. In so doing they are not acting in the affairs of a city or county, prohibited by any law or constitution.

It is not a special or local law " regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts."

In no way does the Act in question offend against the above quoted clause of the Constitution. It provides in no way for or concerning any matter or thing in any judicial proceeding or inquiry before courts.

It gives the right of appeal to court, and after the appeal empowers the court to act.

The legislature made the Act applicable in every county of the Commonwealth, not provided with a similar Act.

Applied to appeals from boards of appeal and revision of third class cities, the Act of 1878 is unquestionable. It is applicable to every third class city of the state.

It is said by the plaintiff in error, " it is levying a tax under a local law."

We answer that, granting the right of appeal to a citizen from an unequal and erroneous assessment, in order that the error may be corrected, cannot be tortured into the levying of a tax.

We answer further that the action of the courts, in equalizing and correcting errors in the decisions of commissioners and boards of appeal and revision, is in no way making an assessment or levying a tax.

In view of the errors and gross wrongs for which this Act provides the only remedy, we ask a careful consideration of the opinion of the learned Judge in the court below.

Mr. Justice GREEN delivered the opinion of the court, October 4th, 1886.

[City of Scranton v. Silkman.]

The right of appeal, asserted by the defendant in error in this case, is given only to the owners of real estate in counties of less than 500,000 inhabitants. The Act of 24th May, 1878, which gives this right is therefore of limited application, and comes within our ruling in the case of Davis *v.* Clark, 10 Out., 384, in which we held that the exclusion of a single county from the operation of the Act makes it local. There is no doubt much force in the consideration that the only county which is now excluded has a system of appeal of its own, and the present law practically makes the right general which was before local. But the difficulty we experience is that we cannot consistently hold a principle of construction applicable in one case and not applicable in another where the same conditions exist. It is perhaps unfortunate that we are obliged to apply the doctrine of Davis *v.* Clark to the present case, because we thereby deprive a large class of citizens of a valuable privilege. But the remedy is with the legislature and not with us. It is far better that the law-making power should itself correct the mischief by a new, and proper enactment, than that the judicial department of the government should pursue a shifting, tortuous policy by executing a rule of construction in one case and refusing it in another when the circumstances of the two are the same.

We cannot doubt that the legislation we are considering comes within the prohibition of the Constitution. The 7th section of Article III. provides that the General Assembly shall not pass any local or special law . . . . . regulating the affairs of counties, cities, townships, wards, boroughs, or school districts.

The Act in question is one which regulates the assessment and collection of taxes in the several counties of .the Commonwealth, and the receipt and disbursement of such moneys are certainly part of the affairs of the counties. The machinery both for the assessment and collection of taxes for county purposes is purely local, and the local courts are clothed with a special jurisdiction to determine controversies in relation thereto. The general subject has been so much discussed in our recent decisions that enlargement upon it is unnecessary.

> Judgment reversed and appeal stricken off at the cost of the defendant in error.