## APPEAL OF D. P. AYARS ET AL.

[AYARS ET AL. v. WESTFIELD ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LUZERNE COUNTY, IN EQUITY.

Argued April 13, 1888—Decided January 7, 1889.

1. The provisions of the act of May 24, 1887, P. L. 204, (dividing the cities of the state into seven classes, etc.,) which relate to the election and installation of select and common councilmen, are inoperative in a city of the fifth class having a single branch council, until the terms of all the councilmen in office at the date of the approval of the act shall have fully expired.

2. Moreover, the said act of May 24, 1887, P. L. 204 (and as well, it seems, the act of April 11, 1876, P. L. 20, amendatory of the act of May 23, 1874, P. L. 230), is unconstitutional and void as in violation of § 7, article III., of the constitution: Wheeler v. Philadelphia, 77 Pa. 338; Kilgore v. Magee, 85 Pa. 401, explained and distinguished; Commonwealth v. Patton, 88 Pa. 258; Morrison v. Bachert, 112 Pa. 322; Scranton Sch. D.'s App., 113 Pa. 176; Philadelphia v. Haddington Church, 115 Pa. 291; Weinman v. Railway Co., 118 Pa. 192, followed.

3. Classification, with the view of legislating for either class separately, is essentially unconstitutional, unless there exists a necessity therefor, springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others.

4. The people having prescribed by their constitution not only the form of enacting laws, but also, as to certain subjects, the method of legislation, by ordaining that no local or special law relating to those subjects shall be passed, whether, in any given case, the legislature has transcended its power and enacted a law in conflict with that limitation, is essentially a question of law necessarily to be decided by the courts.

Statement of Facts.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 3 July Term 1888, Sup. Ct.; court below, No. 4 May Term 1888, C. P. in Equity.

To the number and term of the court below referred to, D. P. Ayars and fourteen others, as members of the select council, with Charles Bauer and thirty others, as members of the common council, and F. V. Rockafellow, treasurer, of the city of Wilkes-Barre, filed a bill in equity against C. A. Westfield and twenty others, charging that the city of Wilkes-Barre, was originally incorporated by the special act of May 4, 1871, P. L. 539, with the corporate powers and government of the city vested in a mayor and a city council composed of six councilmen at large and fifteen ward councilmen; that under the classification made by the act of May 24, 1887, P. L. 204, Wilkes-Barre was a city of the fifth class, and the plaintiffs had been elected to the offices they severally claimed to hold at the first election under the said act, to wit, February 21, 1888, and other officers, to wit, a controller and three assessors, had been elected at the same election; that the defendants were members of the city council of Wilkes-Barre, under its special charter, and were authorized to act in that capacity until the first Monday of April, 1888, at 10 o'clock A. M., at which time the members of the select and common councils who have been duly elected as aforesaid, were to be installed as their successors; that, nevertheless, certain of the defendants, who were named, combining with certain other persons, also defendants in the bill, organized a city government for the said city, under its special charter, on the first Monday of April, 1888, at 10 o'clock A. M., usurping the functions of the select and common councils aforesaid, and were about to levy taxes and make contracts in the name of the city, and had seized and were maintaining possession of the city property and buildings, and excluded therefrom the select and common councils aforesaid; praying for an injunction, etc.

The answer of the defendants admitted the facts set forth in the bill, but averred that at the date of the passage of the act of May 24, 1887, the city of Wilkes-Barre "was, had been and still is a city 'operating with but one branch of council' and

that the members thereof, who were in office at the date of the approval of said act," were certain of the defendants named whose terms of office would expire, some of them upon the first Monday of April, 1889, and others of them upon the first Monday of April, 1890; that others of the defendants named "were lawfully and regularly elected at the last municipal election, viz.: the third Tuesday of February, 1888, members of the one branch council of the city of Wilkes-Barre, to fill vacancies occasioned by the resignation and removal from their districts of certain councilmen and by the regular expiration of the terms of certain other councilmen." Thus answering that the election of the plaintiffs under the act of May 24, 1887, as averred in the bill, was premature, the defendants further averred that the said act was unconstitutional and void, because in violation of § 7, article III. of the constitution.

The cause was heard upon bill and answer, and on April 2, 1888, the court, RICE, P. J., ordered that the injunction prayed for be refused and the bill dismissed, for the reasons given in an opinion filed on March 24, 1888, to No. 2 May Term 1888, which opinion was as follows:

According to the classification made by the act of May 24, 1887, P. L. 204, entitled an " act dividing cities of this state into seven classes," etc., Wilkes-Barre is a city of the fifth class, and, at the date of the approval of the act, was, by virtue of the provisions of its special charter, " operating with but one branch of council."

The defendants may be classified as follows : 1. Members of said body elected prior to the approval of the act of 1887, for terms which will not expire until the first Monday of April, 1889 and 1890. 2. Persons elected at the last municipal election to fill vacancies. 3. Persons elected at the same election as the successors of members of council whose terms will expire on the first Monday of April, 1888. It is alleged in the bill, and admitted in the answer, that these individuals purpose, on the first Monday of April, 1888, to organize, and hereafter to exercise the functions and perform the duties of councilmen, and, amongst other things, to levy taxes, elect city officers, and to take and retain possession and control of city property to the exclusion of the persons claiming to have

been elected at the last municipal election as select and common councilmen.

The plaintiffs' contention is, that on and after the last mentioned date, the body known as the city council, and the office of councilman, created by the special charter of the city, will cease to exist, and thereafter the legislative department of the city will consist of two branches, the select and the common councils, the members of which have been elected under the act of 1887. They therefore pray for an injunction to restrain the defendants from organizing as aforesaid, upon the grounds that the proposed action of the defendants will be an illegal usurpation of the functions of the select and common councils of the city, and that, if they are permitted to proceed, great confusion will result in the government of the city, in levying and collecting its taxes, in maintaining law and order within its limits, and irreparable damage will result to the citizens in their persons and estates ; and, in short, the bill denies the right of the defendants, or any of them, to organize and act as councilmen of the city after the date mentioned.

On the other hand, the rights of the defendants are defended upon several grounds. 1st. That the act of 1887 is wholly unconstitutional and void. 2d. That the legislature did not intend said act to apply to the city of Wilkes-Barre, and to repeal the provisions of its special charter vesting the legislative power of the city in a single body known as the city council. 3d. That the provisions of said act relating to the election and installation of common and select councilmen cannot go into effect and become operative until the terms of all the members of the present council, in office at the date of the approval of the act, shall have fully expired, which will not be until the first Monday of April, 1890.

1. The suggestions made in support of the second proposition are well worthy of consideration, but after a most patient study of the act we cannot escape the conclusion that it was intended to apply, not only to cities hereafter to be incorporated and to cities heretofore incorporated, operating under the act of 1874 and its supplements, but also to cities operating under special charters, and to repeal inconsistent laws whether general or special. There is strong reason for questioning whether the title of the act clearly expresses, and gives notice

of, all the subjects of legislation embraced in it, but we do not think this is true as to the particular provisions required to be considered in this case. An entire act is not necessarily unconstitutional because its title fails to give notice of some particular matter contained therein: Dewhurst v. Allegheny, 95 Pa. 437. An act repealing a special or local law may be constitutional, notwithstanding the bill does not expressly state that such was its purpose: Commonwealth v. McCandless, 10 Cent. R. 758.

2. It is now too late to question the power of the legislature to classify cities according to population, and to legislate, upon some subjects at least, for each class separately: Wheeler v. Philadelphia, 77 Pa. 338; Kilgore v. Magee, 85 Pa. 401. It is argued, however, that such classification must be reasonable and justified by necessity, otherwise it will be in violation of § 7, article III., of the constitution. But who is to decide as to the reasonableness of, and necessity for, the classification, and by what rule or standard are these questions to be determined? Conceding it to be a matter resting primarily in the discretion of the legislature, is their discretion unlimited, and their judgment conclusive? We think not. Where classification is carried to such an extreme as to leave no room for doubt, that, in purpose and effect, it is a mere cover for special legislation, we believe the courts have the power, and should declare that the constitutional limits have been passed. The question whether this is such an act is of the gravest importance, and no good purpose is to be served by postponing its decision, but, as we now view the case, it is not absolutely required to be made at the present time. Furthermore, while the inferior courts have the power, and in a plain case should exercise it, to declare an act unconstitutional, yet there is impropriety in doing so, except where the case is very clear and the emergency great.

3. Therefore, without stopping to suggest technical difficulties in the way of a conclusive adjudication of the rights of these contending officers in this form of proceeding, or to discuss further the first two propositions above stated, we shall proceed at once to a consideration of the question, whether, in any legal view of the case, the time has arrived for the transition from a city government, with a single branch council, to a government with two branches of councils. . . . . .

Our conclusions may be summed up as follows : The defendants of the first class are entitled to hold their offices until the expiration of the terms for which they were elected ; the defendants of the second and third classes were legally elected under the city charter ; the said defendants, if otherwise duly qualified, will be authorized on the first Monday of April next to organize, and thereafter to exercise the functions and perform the duties of members of the council of the city of Wilkes-Barre, and the transition from a city government with a single council to a government with two branches of councils, cannot legally occur until the expiration of the terms of the members of said single council, in office at the date of the approval of the act of 1887. It follows that this bill must be dismissed.

Judge WOODWARD authorizes me to say that he concurs in the conclusions just stated.

Thereupon the plaintiffs took this appeal, specifying that the court erred :

1. In holding that the city council of Wilkes-Barre is entitled to exercise the functions of councils until April, 1890.

2. In not holding that the select and common councils under the act of 1887, are entitled to exercise their functions since April 2, 1888.

*Mr. S. J. Strauss* (with him *Mr. A. Farnham* and *Mr. J. V. Darling*), for the appellants :

I. The constitutionality of the act of 1887 was attacked on two grounds: (1) The insufficiency of the title. (2) The unreasonableness of the classification.

1. The objection on the ground of the insufficiency of the title, is briefly disposed of by the learned court below: " An entire act is not necessarily unconstitutional because its title fails to give notice of some particular matter contained therein : " Dewhurst v. Allegheny, 95 Pa. 437 ; McGee's App., 114 Pa. 470. The title states the purpose of the act to be : To prescribe regulations relative to the passage of ordinances, the giving of contracts, the management of finances, the terms and dates of officers and the punishment of certain offences in all cities, etc. It is difficult to conceive of a title more sweeping.

Any law on the subject of municipal government might find a place under it. Ruth's App., 10 W. N. 498, was cited below to sustain the theory that the act, in so far as it repeals the special charter of Wilkes-Barre, is unconstitutional because there is no reference in the title to a repeal of local laws. But "an act repealing a special or local law may be constitutional notwithstanding the title does not expressly state that such is its purpose:" Commonwealth v. McCandless, 10 Cent. R. 758; Twenty-second St., 102 Pa. 108..

2. The power of the legislature to classify cities according to population was not called in question by the defendants in the court below. It has been recognized in many cases: Wheeler v. Philadelphia, 77 Pa. 339; Kilgore v. Magee, 85 Pa. 401; Commonwealth v. Patton, 88 Pa. 258: Scowden's App., 96 Pa. 422; Davis v. Clark, 106 Pa. 377; Morrison v. Bachert, 112 Pa. 322; Scranton Sch. D.'s App., 113 Pa. 176; McCarthy v. Commonwealth, 110 Pa. 243; Scranton v. Silkman, 113 Pa. 191; Luzerne Co. v. Glennon, 109 Pa. 564; Dillon, Mun. Corp., §§ 16, 20, 24. Wheeler v. Philadelphia was not a decision of first impression in Pennsylvania: the opinion cited Walker v. Cincinnati, 21 Ohio St. 14.

3. If anything is certain, it is that the legislature has the authority to classify cities by population. Having the authority, it is within its own discretion when and to what extent it shall be exercised. Who should judge of the proper time and mode? "The legislature is quite as able to do this as the courts. The legislature must exercise its discretion. How can the courts control it? If a discretion be conceded at all, in my judgment the courts have no right to control it:" State v. County Court of Boone Co., 50 Mo. 317; 30 Alb. L. J. 451. By analogy we may also cite: Warfel v. Cochran, 34 Pa. 381; Hill v. Commissioners, 1 Pars. 501; Market St. R. Co. v. Bldg. Com., 4 Brewst. 173.

II. The act of May 24, 1887, is applicable to Wilkes-Barre and authorizes a change from the one branch council to two branches of council on the first Monday of April 1888, at 10 o'clock A. M.

The act was approved May 24, 1887. Its pertinent provisions are found in Article IV. § 1; Article IV. § 16; Article IV. § 17; Article VIII. § 2; Article XIX. § 1; Article XXIII.

Arguments.

§ 1; Article XXIII. § 4. To arrive at a proper construction of a statute, all its parts should be read together, and, if possible, all its provisions should be given the ordinary meaning of their language. Giving our attention to article VIII. § 2, and article XXIII. §§ 1 and 4, and reading them together, they assume this form:

1. At the first election under the act councilmen, select and common, shall be chosen. 2. Provided, that officials in office "at the time of the approval of this act" shall continue to hold their offices for the terms for which they were elected, "except where otherwise herein provided." 3. Provided that councilmen in cities of the fourth class in office now (the date of the approval of this act) shall hold until April, 1888. 4. Provided that councilmen in cities having but one branch of council in office "at the date of the approval hereof" shall exercise the functions of councils until their successors are installed under this act.

The leading provision is that at the first election under the act, councilmen may be chosen. In so far as the subsequent provisions compel it, the leading provision must give way. But, wherever effect can be given to the subsequent provisions without impairing the main purpose of the act, that construction must be adopted.

*Mr. William S. McLean* and *Mr. H. W. Palmer* for the appellees:

1. The first case that arose under § 7, article III. of the constitution, Wheeler v. Philadelphia, 77 Pa. 338, allowing classification of cities, was decided purely on the ground of overruling necessity. That case was followed by Kilgore v. Magee, 85 Pa. 401, in which a strong but unsuccessful effort was made by Hon. J. S. Black, who was a member of the constitutional convention, to reverse Wheeler v. Philadelphia, and again the necessity of the case was strongly presented as the reason for the decision. In subsequent decisions: Commonwealth v. Patton, 88 Pa. 258; Scowden's App., 96 Pa. 422, the fact is distinctly stated that the only ground for classification recognized by this court is necessity, and the necessity must be such as to commend itself to the judgment of the court, no matter what the legislature may have thought about it, or the

act will not be sustained. So in McCarthy v. Commonwealth, 110 Pa. 243; Davis v. Clark, 106 Pa. 377; Scranton v. Silkman, 113 Pa. 191; Philadelphia v. Haddington M. E. Church, 115 Pa. 291; Morrison v. Bachert, 112 Pa. 322. From all the deliverances of this court, the following propositions may be regarded as established: (1) Classification of cities and counties by population only, for purposes of legislation may be permitted in cases where actual and imperative necessity exists. (2) Legislation for such classes will be tolerated only when no member of the class is excluded. (3) The action of the legislature in passing classification acts is not conclusive on the question of the necessity for such acts. If the necessity cannot be shown to exist, to the satisfaction of the court, they will be held unconstitutional.

2. The act of 1887 bears upon its front incontestible evidence of want of necessity in this: It groups four classes of cities, the 4th, 5th, 6th and 7th, and with trifling exceptions makes the same law for all. If the same act is to apply to all, why then should not all be in the same class? What excuse, or reason, or necessity, can be urged for separating cities that can without separation be as well governed under one act? That these cities can be governed by one law, is undeniable, because but one law is provided for them. The only departures from a general act covering all these classes, were introduced to cover special existing conditions in some cities, and thus remove objections to its passage: See article VIII., § 1, which makes the number of councilmen representing a ward, different in cities of the 4th class, to accommodate Scranton city, the only 4th class city where they fear that the rule of representation applied to other cities might not suit them.

3. Under Philadelphia v. Haddington M. E. Church, 115 Pa. 291, article V. is undoubtedly unconstitutional in that it is in violation of the provision that all taxes shall be collected under uniform laws, and that no local law shall be enacted authorizing the creation or extension of liens. Article IX. is certainly in violation of the constitution, both as special legislation on a subject upon which only general legislation is permissible, and also because the subject of schools is not alluded to in the title of the act. Article XIX., entitled, Taxation and Municipal Claims, is also special legislation on the subject

of collecting taxes, creating and continuing liens, etc. But, admitting that the articles which are clearly unconstitutional might be eliminated without disturbing the remainder of the act, the point here made is, that this excessive classification can be sustained only on the ground of necessity, and that necessity must be found in the different wants of the different classes. Who can suggest a valid reason for a difference in the charters of Scranton and Wilkes-Barre, Allentown and Reading, Carbondale and Corry, Easton and York? They are all inland towns, inhabited by substantially the same kind of people, engaged in the same class of pursuits. The functions of city government are the same in all,—to open and grade streets, care for the public health, protect the public peace, and levy and collect from each inhabitant his share of the public burden, etc.

4. The course of judicial decision in other states, upon provisions similar to those contained in the constitution of Pennsylvania, is instructive as showing the general disposition of courts of last resort to enforce constitutional provisions: State v. Trenton, 42 N. J. L. 486; Desmund v. Dunn, 55 Cal. 242; Eader v. Board of Education, 55 Cal. 489; State v. Kring, 74 Mo. 612; State v. Geddis, 44 N. J. L. 363; State v. Stark, 18 Fla. 255; State v. Herrman, 75 Mo. 340; State v. Jersey City, 45 N. J. 297; Gibbs v. Morgan, 30 N. J. Eq. 126; Ernest v. Morgan, 39 N. J. Eq. 39.

5. Even if the act were constitutional, its provisions, in so far as the election of select and common councilmen is concerned, cannot apply to the city of Wilkes-Barre at present, because the terms of a number of the councilmen, in office when the act was approved, have not yet expired. Wilkes-Barre is a city of the 5th class under the act. By the concluding sentence of § 1, article XXIII., of the act, "All officers of each of said cities of the 4th, 5th, 6th and 7th classes, in office at the date of the approval hereof, shall, except where otherwise herein provided, continue to hold their offices for the terms for which they were respectively elected." Reference is also suggested to the concluding paragraph of § 1, article I., and to the last section of the act. Now, when we come to apply the law to the facts, if the act is not killed outright by the constitutional objection, we can come to but

one conclusion, to wit, that the one branch council of the city of Wilkes-Barre is continued until the first Monday of April, 1890, and in the meantime vacancies occurring therein are to be filled under the old charter.

OPINION, MR. JUSTICE STERRETT:

One of the questions involved in this contention is whether, under the provisions of the act of May 24, 1887, entitled "An act dividing cities of this state into seven classes," etc., the time has arrived for the contemplated change, in the city of Wilkes-Barre, from a single council to one consisting of two separate branches. For reasons given at length in the opinion of its learned president, the court below rightly held it had not,—"that the provisions of said act relating to the election and installation of select and common councilmen cannot go into effect and become operative until the terms of all the members of the present council, in office at the date of the approval of the act, shall have fully expired, which will not be until the first Monday of April, 1890."

Another and vastly more important question is, whether the act, under consideration, is constitutional. That subject was also briefly considered; but, while the court appears to have inclined to the opinion that the act is unconstitutional and void, it was not deemed necessary to decide the question, because, for the reason above stated, the bill was prematurely brought and could not therefore, in any event, be sustained.

We might for same reason affirm the decree, but the question is so important, in all its bearings, that it should be decided without unnecessary delay.

The broad ground on which the court was asked to declare the act unconstitutional is, that, under the specious guise of classification, it is local and special legislation pure and simple, and, without pretence of necessity, opens wide the door for further legislation of the same vicious and inhibited character. It is difficult if not impossible to escape from that position.

Classification is not expressly forbidden by the constitution. On the contrary, it is distinctly recognized, for certain purposes. For example, article IX., section 1, declares, "All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied

and collected under general laws." Thus, by necessary implication, authority is given to classify property for the purpose of taxation, but by express mandate of the last clause above quoted, all taxes must be levied and collected under general and not special or local laws.

During the session of the legislature immediately preceding the adoption of the present constitution, nearly one hundred and fifty local or special laws were enacted for the city of Philadelphia, more than one third that number for the city of Pittsburgh, and for other municipal divisions of the state, about the same proportion. This was by no means exceptional. The pernicious system of special legislation, practiced for many years before, had become so general and deep-rooted and the evils resulting therefrom so alarming, that the people of the commonwealth determined to apply the only remedy that promised any hope of relief. Doubtless, it was a proper appreciation of the magnitude of these evils, as much as anything else, that called into existence the convention that framed the present constitution and induced its adoption by an overwhelming vote. One of the manifest objects of that instrument was to eradicate that species of legislation, and substitute, in lieu of it, general laws whenever it was possible to do so. This is so clearly apparent that no unbiased mind can contemplate the 7th section of article III., and kindred provisions, without reaching that conclusion. That section contains a schedule of nearly fifty prolific subjects of previous special and local legislation, and ordains that "The general assembly shall not pass any local or special law" relating to either of them. As an additional safeguard, in cases where special legislation is not expressly prohibited, the next section declares, "No local or special bill shall be passed unless notice of the intention to apply therefor shall have been published," etc.

Among the prohibited subjects specified in the 7th section, supra, are "local or special laws authorizing the creation, extension or impairing of liens;" "regulating the affairs of counties, cities, townships, wards, boroughs or school districts;" "authorizing the laying out, opening, altering or maintaining roads, highways, streets or alleys;" "vacating roads, town plots, streets or alleys;" "incorporating cities, towns or villages, or changing their charters;" "creating offices, or prescribing the powers and

duties of officers in counties, cities, boroughs, townships, election or school districts;" "regulating the management of public schools, the building or repairing of school-houses, and the raising of money for such purposes," etc.

In Wheeler v. Philadelphia, 77 Pa. 338, the question of classification first arose, under the act of May 23, 1874, entitled "An act dividing the cities of this state into three classes, regulating the passage of ordinances," etc. It was there held that the act, so far as its provisions were then involved, does not contravene the clause of the constitution, prohibiting the passage of any local or special law "regulating the affairs of counties, cities," etc.; that the classification therein provided for, is founded on certain manifest peculiarities, distinguishing the cities of each class from the others, and to some extent, at least, demanding legislation for each, respectively, that would not only be unnecessary but detrimental to the other classes; and hence the act, so far as its provisions were involved in that contention, was constitutional.

It is not necessary to refer specially to the reasons given in support of these conclusions; nor, is any attempt to further fortify the latter by suggesting other reasons, required. All that can be profitably said on the questions involved will be found in the elaborate and exhaustive opinion of the court, delivered by our brother PAXSON. We are not asked to over-rule that case, but simply to say that classification, as a mere pretext for special and local legislation, has since been carried to an extreme for which no warrant can be found either in the fundamental law or the decisions of this court.

The question was again presented in Kilgore v. Magee, 85 Pa. 401. In that case, Chief Justice AGNEW, referring to Wheeler v. Philadelphia, supra, said: "We adhere to that decision, and indeed cannot see how the question of power could have been decided differently. To say that no general law can be passed to regulate a certain subject, because some of the classes contained in the regulation do not exist or exist only in a limited form, is to hold that no law can be passed to provide for future wants and necessities. The welfare of the state, and one of the chief purposes of legislation, would be struck down by such a decision."

Subsequent legislation clearly indicates that the scope of the

decision in Wheeler v. Philadelphia was either misunderstood or ignored. It was never intended to license indiscriminate classification as a mere pretext for the enactment of laws essentially local or special. Repeated and pointed admonitions of that fact were given in subsequent cases involving the general subject. In 1878, an act was passed, the sole object of which was to provide specially for holding courts in the city of Titusville in the county of Crawford. For the purpose of individuating that city and county and limiting the operation of the act to them, without mentioning either by name, the following ingenious but deceptive periphrasis was employed: " In all counties of this commonwealth where there is a population of more than sixty thousand inhabitants, and in which there shall be any city incorporated, at the time of the passage of this act, with a population exceeding eight thousand inhabitants, situate at a distance from the county seat of more than twenty-seven miles by the usually traveled public road, it shall be the duty of the president judge or additional law judge, or either of them, to make an order providing for the holding of one week of court, at each regular term of court for said county, for the trial of civil or criminal cases in said city." In Commonwealth v. Patton, 85 Pa. 258, this covert attempt at special legislation was fitly characterized as " classification run mad."

At the next session of the legislature another abortive attempt was made to accomplish the same object by a somewhat different, but at the same time equally elaborate circumlocution, differing from the former, not in kind but only in degree. In pronouncing that act also unconstitutional, this court said: " It is no part of our business to discuss the wisdom of this legislation. However vicious in principle we might regard it, our plain duty is to enforce it, provided it is not in conflict with the fundamental law. It requires but a glance at the act to see that it is an attempt to evade the constitution. It is special legislation under the attempted disguise of a general law. Of all forms of special legislation this is the most vicious. . . . . The act was doubtless regarded by its framers as classification of counties, but it is not so. Nor does any good reason occur to my mind why there should be such classification. If there be such reasons, amounting to a necessity

therefor, we shall probably hear of them in due season. In the meantime, classification which is grounded on no necessity and has for its sole object an evasion of the constitution will not be encouraged: ".Scowden's App., 96 Pa. 422.

Again, in Morrison v. Bachert, 112 Pa. 322, an attempt to classify counties for the purpose of regulating fees of officers was declared unconstitutional. Referring to the section now under consideration, our brother PAXSON, by whom the opinions in the two last cited cases were delivered, said: " It was a wise provision and will be sternly enforced. It is our purpose to adhere rigidly to that instrument that the people may not be deprived of its benefits. It ought not to be necessary for this court to make this judicial declaration, but it is proper to do so in view of the amount of legislation which is periodically placed upon the statute books in entire disregard of the fundamental law. Much of this legislation may remain unchallenged for years, only to be overturned when it reaches this court. In the meantime parties may have acted upon it, rights may have grown up, and the inconvenience and loss entailed thereby may not be inconsiderable. As we view it, this note of warning at this time is needed."

Other cases might be cited in which similar notes of warning were sounded. Among these are Davis v. Clark, 106 Pa. 377; McCarthy v. Commonwealth, 110 Pa. 243; Scranton Sch. D.'s App., 113 Pa. 176; Scranton v. Silkman, 113 Pa. 191; Strine v. Foltz, 113 Pa. 349; Philadelphia v. Haddington Church, 115 Pa. 291; Evans v. Phillipi, 117 Pa. 226; Weinman v. Railway Co., 118 Pa. 192. In Scranton Sch. D.'s Appeal, supra, it was said by our brother GREEN: " All our recent decisions are to the effect that if local results either are or may be produced by a piece of legislation, it offends against" the article prohibiting local or special legislation. In Philadelphia v. Haddington Church, supra, an act giving to a scire facias the effect of extending municipal liens in cities of the first class, was pronounced unconstitutional for similar reasons. In Weinman v. Railway Co., supra, it was held that an act providing for the incorporation and regulation of street railway companies, in cities of the second and third classes, was both special and local legislation and therefore unconstitutional,—special, because it relates to only a few of the general class known as

street railway companies, and local, in that its operations are confined to specified localities. In that case our brother WIL-LIAMS, referring to the subject of classification, said: "For purposes of local government the state is subdivided into counties, townships and other municipal and quasi municipal corporations. Each class of these subdivisions has purposes to subserve that are peculiar to it, and needs to be invested with the powers necessary to that end. Generally speaking, all the members of each class have the same local functions to perform. Classification, therefore, on that basis has been recognized, and a statute relating to all the townships, all the school districts, or all the members of any particular class of the municipal divisions of the state, has been held to be constitutional. It has been found desirable to divide cities into classes upon the basis of their population. The needs of a great city with half a million or more of people are somewhat different, in many respects, from the needs of a city with ten thousand. The organization of their local governments and the management of their municipal affairs will be quite unlike. Each of these classes requires legislation peculiar to itself, but such legislation must be applicable to all the members of the class to which it relates, and must be directed to the existence and regulation of municipal powers and local government."

Some of the cases above cited have been quoted at considerable length for the purpose of showing that this court never intended to sanction classification as a pretext for special or local legislation. On the contrary, the underlying principle of all the cases is that classification, with the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists,—a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others. Laws enacted in pursuance of such classification and for such purposes, are, properly speaking, neither local nor special. They are general laws, because they apply alike to all that are similarly situated as to their peculiar necessities. All legislation is necessarily based on a classification of its subjects, and when such classification is fairly made, laws enacted in conformity thereto cannot be properly charac-

terized as either local or special. A law prescribing the mode of incorporating all railroad companies is special, in the narrow sense that it is confined in its operations to one kind of corporations only; and, by the same test, a law providing a single system for organization and government of boroughs in the state, would be a local law; but every one conversant with the meaning of those words, when used in that connection, would unhesitatingly pronounce such statutes general laws. But, as was said in Scowden's Appeal, supra, "classification which is grounded on no necessity and has for its sole object an evasion of the constitution" is quite a different thing.

The purpose of the provision under consideration was not to limit legislation, but merely to prohibit the doing, by local or special laws, that which can be accomplished by general laws. It relates not to the substance, but to the method of legislation, and imperatively demands the enactment of general, instead of local or special laws, whenever the former are at all practicable.

The act of 1874, dividing the cities of the state into three classes, viz.: those containing over three hundred thousand population, those containing less than three hundred thousand and exceeding one hundred thousand, and those containing less than one hundred thousand and exceeding ten thousand, was sustained, as to such of its provisions as have been involved in adjudicated cases, because it was considered within the spirit if not the letter of the constitution. As to the number of classes created, that act appears to have covered the entire ground of classification. It provided for all existing as well as every conceivable prospective necessity. It is impossible to suggest any legislation, that has or may hereafter become necessary for any member of either class, that cannot, without detriment to other members of same class, be made applicable to all of them. If classification had stopped where the act of 1874 left it, it would have been well; but it did not. Without the slightest foundation in necessity, the number of classes was soon increased to five, and afterwards to seven: and, if the vicious principle, on which that was done, be recognized by the courts, the number may at any time be further increased until it equals the number of cities in the commonwealth. The only possible purpose of such classifica-

tion is evasion of the constitutional limitation; and, as such, it ought to be unhesitatingly condemned.

The fact that the extended classification of 1876, and more especially that of 1887, is unnecessary, and therefore unwarranted, is manifest from an inspection of the acts themselves. With very few and quite unimportant exceptions, the charter powers of the fourth to seventh classes, inclusive, under the latter act, are precisely similar. There is nothing in either of the points of difference that can possibly be regarded as essential. Aside from the improper consideration that five classes furnish greater facilities for special legislation than one class would do, there is nothing to prevent the last four classes from being included in the third class established by the act of 1874, which comprises all cities of more than ten and less than one hundred thousand population. Their needs are all so similar that no charter power required for either of them would be unnecessary or detrimental to any of the others. The larger cities of such a class, that is, a class embracing all cities over ten and less than one hundred thousand population, would doubtless require a larger representation in each branch of councils, but that of course would be easily regulated by the adoption of a suitable ward and population basis of representation.

Reference might also be made to several special provisions of the act of 1887, such as those relating to public schools, taxation and municipal claims, creation and continuance of tax liens, and sales of real estate therefor, etc., but it is unnecessary. In greater or less degree, they all offend against provisions prohibiting special legislation. In addition to that, the subject of public schools is not even hinted at in the title of the act. Moreover, school districts, as quasi corporations belonging to the public school system, have no necessary connection with municipal government. It is expressly required, as we have seen, that "all taxes shall be levied and collected under general laws;" and, it is impossible to suggest any valid reason why they should not be thus levied and collected. When the present constitution was adopted, local and special laws relating to public schools, assessment and collection of taxes etc., were in force in some of the cities and remained unaffected by that instrument; but that fact will not justify the

substitution of other local or special laws in their stead.   When
new legislation is resorted to, it must conform to the require-
ments of the constitution.

It has been suggested that such provisions of the classifica-
tion acts, as are not in harmony with the constitution, may be
eliminated without destroying other provisions thereof; but,
that is no answer to the crowning vice of unnecessary and
excessive classification which stands out in bold relief on the
face of both acts, and of which nearly all their provisions are
predicated.   Those acts doubtless contain many wise and
wholesome provisions, but they are so interwoven with and
dependent on others that are unconstitutional and void, that
neither of the acts of 1876 or 1887 can be sustained, even in
part.

It has also been suggested that the question of necessity for
classification and the extent thereof, as well as of what are
local or special laws, is a legislative and not a judicial question.
The answer to that is obvious.   The people, in their wisdom,
have seen fit not only to prescribe the form of enacting laws,
but also as to certain subjects, the method of legislation, by
ordaining that no local or special law relating to those subjects
shall be passed.   Whether, in any given case, the legislature
has transcended its power and passed a law in conflict with
that limitation is essentially a question of law and must neces-
sarily be decided by the courts.   To warrant the conclusion
that the people, in ordaining such limitations, intended to in-
vest their law-makers with judicial power and thus make them
final arbiters of the validity of their own acts, would require
the clearest and most emphatic language to that effect.   No
such intention is expressed in the constitution, and none can
be inferred from any of its provisions.   That those limitations
were designed to establish a fixed and permanent rule cannot
be doubted; but, if the ultimate application of that rule were
to rest solely in the judgment of the body on which it was in-
tended to operate, nothing could be more flexible.   As was
well said in Pell v. Newark, 40 N. J. L. 71, 80 : " No standard
could be established by which the law-maker could be guided,
and what might be rejected at one session as improper might
become a law at the next, and thus the rule would fluctuate
with the ever changing membership of that body.   The valid-

ity of an act would depend not so much upon the fixed rule of the constitution as upon the liberality or strictness with which successive legislatures, under the pressure of local influences, might determine to interpret the restraint upon their own action. . . . . . That the legislature would act in good faith, must be presumed. Purity of motive and a desire to keep within the prescribed limitations must be conceded to its members at all times ; but that the people should have deliberately framed and imbedded in their organic law a provision to prohibit special legislation where general laws might be passed, and, at the same time, should have intended to put legislative action beyond review, where there was a clear infraction of the prohibition, is a proposition to which it seems impossible to assent." No such proposition can be entertained by the courts without abandoning one of the most important branches of jurisdiction committed to them by the fundamental law, viz.: the power to ultimately determine whether or not a given law is local or special and has been passed in disregard of the constitutional limitation that has been placed upon the power of the legislature.

It follows that the decree of the court below is correct not only on the ground that, as to the city of Wilkes-Barre, the act of 1887 is not yet operative, but also on the broader ground that the act is unconstitutional and void.

> Decree affirmed and appeal dismissed at the costs of appellants.